IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SARAH LOWENSTEIN, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO.  11-4689 |
| | : | |
| CATHOLIC HEALTH EAST, ST. MARY MEDICAL CENTER and CLAIRE SHANKS, | : : : | |
| | : | |
| Defendants. | : : | |

**DuBOIS, J.**                                                                                              **October 26, 2011**

**M E M O R A N D U M**

## I.  INTRODUCTION

In this employment discrimination action, plaintiff Sarah Lowenstein alleges that defendants unlawfully denied her medical leave and discriminated against her based on her medical condition.  Presently before the Court is defendants' Motion to Dismiss.  For the reasons that follow, the Court grants the motion in part and denies it in part.

## II.  BACKGROUND[1]

Defendant St. Mary Medical Center ("SMMC") is a Pennsylvania corporation.  (Compl. ¶ 3.)  Catholic Health East ("CHE"), also a defendant, is SMMC's parent company.  See Regional Health Corporations, Catholic Health East, http://www.che.org/regional/ (listing SMMC as a Regional Health Corporation and explaining that each Regional Health Corporation

---

[1]As required on a motion to dismiss, the Court takes all plausible factual allegations contained in plaintiff's complaint to be true.

-1-

"has CHE as its sole member").

SMMC hired plaintiff Sarah Lowenstein ("Lowenstein") as a "staff or pool [p]harmacist" in April 2009. (Compl. ¶ 19.) Shortly thereafter, plaintiff informed defendant Claire Shanks ("Shanks"), a benefits manager in SMMC's human resources department, that she had "an autoimmune disorder with associated morbidities" that would sometimes require her to miss work. (Id. ¶ 24.) Plaintiff requested a "reasonable accommodation for absences related to her medical conditions." (Id. ¶ 25.) Shanks told plaintiff she would "take care of it" as long as plaintiff notified her when she needed to miss work and provided a doctor's note when she returned. (Id. ¶¶ 25-26.) In August 2009, plaintiff submitted a Family and Medical Leave Act ("FMLA") application, which SMMC provided to her, but it was denied because she had not worked at SMMC long enough. (Id. ¶¶ 28-29.)

Plaintiff alleges that, despite Shanks's promise to "take care of" the issue, Shanks either rebuffed or ignored her each time she sought approval for illness-related absences. (Id. ¶¶ 27-38.) Once, Shanks simply did not return plaintiff's phone calls about the matter. (Id. ¶ 35.) On other occasions, she told plaintiff she was too busy to discuss it. (Id. ¶¶ 36-37.) Between August and December 2009, plaintiff received numerous warnings for her absences, despite providing doctor's notes explaining that the absences were related to her medical condition. (Id. ¶¶ 30-31, 33-38.) Plaintiff's supervisor, Suzette Cuncelli ("Cuncelli"), allegedly told plaintiff in late 2009 that "hospitalization [was] not an excuse for missing a day of work." (Id. ¶ 39.)

On March 15, 2010, Cuncelli terminated plaintiff because of her absences. (Id. ¶ 41.) Cuncelli retracted the termination, however, when plaintiff told her the absences were because of her medical condition. (Id.) Plaintiff provided Shanks with another doctor's note explaining

why she had been missing work, but Shanks told her the letter did not conform to SMMC's requirements. (Id. ¶ 43.) Plaintiff produced notes from four more doctors, but Shanks said they were all unacceptable. (Id. ¶ 44.)

Plaintiff missed work on April 16, 2010, because of emergency surgery and provided a doctor's note. (Id. ¶ 45.) On about April 21, 2010, SMMC and Shanks gave plaintiff information on how to reapply for FMLA benefits, stating the application was "necessary in order to approve special accommodation for any absence prior to April 27, 2010." (Id. ¶¶ 46-47.) Plaintiff submitted the application. (Id. ¶ 48.) Nonetheless, on May 5, 2010, before plaintiff received a response, Cuncelli and another SMMC employee notified her that she had been terminated "for violating SMMC's absenteeism policy." (Id. ¶ 49.)

## III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion to dismiss. To survive a motion to dismiss under Rule 12(b)(6), a civil plaintiff must allege facts that "'raise a right to relief above the speculative level.'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550

U.S. at 557).

In Twombly, the Supreme Court used a "two-pronged approach," which it later formalized in Iqbal. Iqbal, 129 S. Ct. at 1950; Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Under this approach, a district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." Twombly, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. Iqbal, 129 S. Ct. at 1950. The court then assess "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s] . . . to determine" whether it states a plausible claim for relief. Id.

## IV. DISCUSSION

Plaintiff's Complaint asserts that she is entitled to relief under the FMLA, the Americans with Disabilities Act ("ADA"), and the Pennsylvania Human Relations Act ("PHRA"). With respect to the FMLA, plaintiff alleges that defendants CHE, SMMC, and Shanks unlawfully denied her FMLA benefits and interfered with the exercise of her FMLA rights. With respect to the ADA and PHRA, plaintiff alleges that because of her medical condition, defendants subjected her to a hostile work environment, harassed her, retaliated against her, and wrongfully terminated her.

In her response to defendants' Motion to Dismiss, plaintiff voluntarily withdrew four of her claims. First, plaintiff has withdrawn her claim for compensatory damages under the FMLA. (Pl.'s Br. Opp'n 5.) Second, plaintiff has conceded that "she does not have a viable hostile work environment claim under the FMLA." (Id.) Third, plaintiff has withdrawn her claims against defendant Shanks under the ADA. (Id.) Fourth, plaintiff has withdrawn her claim for

compensatory damages under the ADA's anti-retaliation provision.  (Id.)

Defendants' Motion to Dismiss is granted as to those claims withdrawn by plaintiff: (1) the compensatory damages claim under the FMLA, (2) the hostile work environment claim under the FMLA, (3) the claims against defendant Shanks under the ADA, and (4) the claim for compensatory damages under the ADA's anti-retaliation provision.  Defendants' Motion to Dismiss is also granted as to plaintiff's claims against CHE.  As to all other claims, the Court denies defendants' motion.

    A.    Claims Against CHE

Defendants argue that plaintiff has failed to state a valid claim against CHE, SMMC's parent company.  It is well settled that "a parent corporation, like any stockholder, is not normally liable for the wrongful acts . . . of a subsidiary even if or simply because the parent wholly owns the subsidiary."  Jean Anderson Hierarchy of Agents v. Allstate Life Ins. Co., 2 F. Supp. 2d 688, 691 (E.D. Pa. 1998); see also Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001).  "[P]arental liability for a subsidiary's acts is appropriate either when a subsidiary is not a separate and independent corporation, but rather the alter ego of the parent company, or if the subsidiary is an agent for the parent in a specific transaction."  Berk v. J.P. Morgan Chase Bank, N.A., No. 11-2715, 2011 WL 4467746, at *7 (E.D. Pa. Sept. 26, 2011) (citing Phoenix Can. Oil Co. v. Texaco, Inc., 842 F.2d 1466, 1476-77 (3d Cir. 1988)).

In this case, plaintiff has alleged merely that (1) CHE is a Pennsylvania corporation, (Compl. ¶ 3), and (2) SMMC is a "Regional Health Corporation of CHE," (id. ¶ 5).  These allegations, even if true, are insufficient to hold CHE liable for SMMC's actions.  The Court thus grants defendants' Motion to Dismiss with respect to all of plaintiff's claims against CHE.

B.  **Claims Under the FMLA Against SMMC and Shanks**

As stated above, plaintiff withdrew her claims for compensatory damages and hostile work environment under the FMLA in her response to the motion to dismiss. The Court accordingly grants defendants' Motion to Dismiss as to those claims. Defendants' motion does not address any of plaintiff's other allegations under the FMLA.

C.  **Claims Under the ADA Against SMMC and Claims Under the PHRA Against SMMC and Shanks**

Plaintiff alleges that defendants subjected her "to a hostile work environment, harassment, retaliation, and termination because of her medical condition" in violation of the ADA and the PHRA. (Compl. ¶¶ 99, 118.) Plaintiff withdrew her claims against Shanks under the ADA and her claim for compensatory damages under the ADA's anti-retaliation provision. The Court accordingly grants defendants' Motion to Dismiss as to those claims.

Defendants make four arguments in support of their contention that additional parts of plaintiff's ADA and PHRA claims should be dismissed. The Court finds none of those arguments persuasive.

1.  **Administrative Exhaustion: Hostile Work Environment and Retaliation Claims Under the ADA and PHRA Against SMMC and Shanks**

"Once a charge of some sort is filed with the EEOC, . . . the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . .'" Hicks v. ABT Assocs., Inc., 572 F.2d 960, 966 (3d Cir. 1978) (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)). EEOC charges are given a "fairly liberal construction," and "the failure to check a particular box on an EEOC charge . . . is not necessarily indicative of a failure

to exhaust the mandatory administrative remedies." Schouten v. CSX Transp., Inc., 58 F. Supp. 2d 614, 616 (E.D. Pa. 1999). "[T]he purpose of the filing requirement is to enable the EEOC to investigate and, if cause is found, to attempt to use informal means to reach a settlement of the dispute." Anjelino v. N.Y. Times Co., 200 F.3d 73, 94 (3d Cir. 1999) (citing Hicks, 572 F.2d at 963).

In this case, defendants assert that plaintiff failed to exhaust her administrative remedies with respect to her hostile work environment and retaliation claims because she did not mention them in her EEOC filing and failed to check the pertinent boxes on the EEOC form. (Defs.' Mot. Dismiss 10-11.) Defendants cite Barzanty v. Verizon PA, Inc., 361 F. App'x 411, 413-14 (3d Cir. 2010), to support their contention. (Defs.' Mot. Dismiss 11.) In Barzanty, the Third Circuit granted summary judgment against a plaintiff's hostile work environment claim, holding that the claim was "not within the scope" of the plaintiff's EEOC charge. 361 F. App'x at 413-14. The plaintiff in that case "provided no facts that suggest[ed] a hostile work environment, and she did not check the box indicating that her charge was a 'continuing action.'" Id. at 414. Moreover, her discrimination claim and her hostile work environment claim involved "separate occurrences"; the facts underlying the claims were unrelated. Id.

Defendants are correct that the present case resembles Barzanty in some aspects. Plaintiff's Complaint alleges in conclusory language that she "complied with all jurisdictional prerequisites and was issued a Notice of Right to Sue by the Equal Employment Opportunity Commission on April 27, 2011." (Compl. ¶ 18.) However, her EEOC charge states that the

discrimination at issue occurred only on May 10, 2010, the day she was terminated.[2] (Defs.' Mot. Dismiss Ex. B, at 2.) As in Barzanty, plaintiff did not check the box indicating that hers was a "continuing action," and the summary of the particulars of her case is mostly devoted to her termination. (Id.)

There are, however, important differences between this case and Barzanty. Unlike Barzanty, the EEOC charge in this case refers to "time and attendance issues" and having been denied a reasonable accommodation. (Id.) These statements should have provided notice to the EEOC that the termination arose from ongoing issues. Moreover, plaintiff's claims in this case arose from a series of related events that allegedly ended in her termination.

The purpose of the exhaustion requirement is satisfied as long as "the EEOC had cognizance of the full scope of the situation during its settlement efforts." Anjelino, 200 F.3d at 94. The Court concludes that plaintiff's administrative filing provided the EEOC with sufficient notice of her hostile work environment and retaliation claims under the ADA and PHRA against SMMC and Shanks.

The Court thus denies this part of defendants' Motion to Dismiss.

> 2. <u>Administrative Exhaustion: Claims Under the ADA and PHRA Against Defendant Shanks</u>

Defendants raise a second exhaustion argument. They contend that plaintiff failed to exhaust her administrative remedies with respect to defendant Shanks because the EEOC charge

---

[2]The Court may consider the EEOC charge at the motion-to-dismiss stage because it is "an undisputedly authentic document" on which "plaintiff's claims are based." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); see also Mulholland v. Classic Mgmt., No. 09-2525, 2010 WL 2470834, at *4 & n.6 (E.D. Pa. June 14, 2010) (examining an EEOC charge in an analogous setting). Both parties attached the EEOC charge to their motion papers.

does not mention her.  (Defs.' Mot. Dismiss 9-10.)  This argument is also unavailing.

      Under the ADA and PHRA, a plaintiff generally may only bring a civil suit against defendants she named in her EEOC charge.  Glus v. G.C. Murphy Co., 562 F.2d 880, 888 (3d Cir. 1977).  An exception exists, however, "when the unnamed party received notice and when there is a shared commonality of interest with the named party."  Schafer v. Bd. of Pub. Educ. of Sch. Dist. of Pittsburgh, 903 F.2d 243, 252 (3d Cir. 1990).  In Glus, the Third Circuit identified four factors relevant to the inquiry:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar [to] the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; [and] 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Glus, 562 F.2d at 888.

      Plaintiff's EEOC charge does not mention Shanks by name.  Nonetheless, the Schafer and Glus factors favor allowing plaintiff's claims against her to proceed.  Both Schafer factors favor plaintiff on the present state of the record.  Since SMMC can be held liable for its employees' discriminatory conduct, SMMC and Shanks shared a common interest in defending against plaintiff's allegations.  See Duffy v. Se. Pa. Transp. Co., No. 94-4260, 1995 WL 299032, at *2 (E.D. Pa. May 12, 1995) ("Because SEPTA is liable for the discriminatory acts of its employees, one could reasonably expect SEPTA to represent the individuals' interests regarding voluntary conciliation and compliance efforts.").  There is a factual question as to whether Shanks received

notice of the EEOC investigation, although she may have, since she had an important role in the events at issue.

Likewise, most of the Glus factors favor plaintiff. The second and third Glus factors, similarity of interests and actual prejudice, are satisfied on the present state of the record. As stated above, SSMC and Shanks had similar interests in defending against plaintiff's claims. There is no allegation (or evidence) that plaintiff's failure to include Shanks's name on the EEOC charge prejudiced Shanks's interests. There is currently no allegation (or evidence) as to the fourth Glus factor. The only Glus factor that does not favor plaintiff is the first: plaintiff's knowledge of the role of the unnamed party. When plaintiff filed her EEOC charge, she knew that Shanks had an important role in the events at issue. However, since most of the Schafer and Glus factors favor plaintiff, the Court concludes that plaintiff exhausted her administrative remedies with respect to defendant Shanks.

The Court thus denies this part of defendants' Motion to Dismiss.

### 3. Failure to State a Claim: Hostile Work Environment Claims Under the ADA and PHRA Against SMMC and Shanks

Defendants also contend that plaintiff failed to state a hostile work environment claim under the ADA and PHRA. (Defs.' Mot. Dismiss 11-13.) To state a prima facie hostile work environment claim under the ADA or PHRA,[3] a plaintiff must allege that: (1) she is a qualified individual with a disability under the ADA, (2) she was subject to unwelcome harassment, (3) the harassment was based on her disability or request for an accommodation, (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive

---

[3]The ADA and PHRA are "interpreted coextensively." Castellani v. Bucks Cnty. Municipality, 351 F. App'x 774, 777 (3d Cir. 2009).

working environment, and (5) the employer knew or should have known of the harassment and failed to take prompt, effective remedial action.  Walton v. Mental Health Ass'n of Se. Pa., 168 F.3d 661, 667 (3d Cir. 1999).

Defendants contest only the fourth Walton element.  In evaluating the fourth element, the district court must "consider all the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).  Defendants contend that although plaintiff used the conclusory phrase "hostile work environment" in her Complaint, she failed to allege that she suffered "sufficiently severe or pervasive" harassment to state a prima facie claim. (Defs.' Mot. Dismiss 12.)

The Court disagrees.  Plaintiff avers that she made earnest efforts to comply with SMMC's requirements but was nonetheless disciplined repeatedly and eventually terminated. She received warnings for at least six absences in a nine-month period, even though Shanks and others at SMMC knew about her medical condition.  (Compl. ¶¶ 31, 33, 38.)  She provided five doctors' notes in March 2010 alone, but Shanks rejected them all as "unacceptable."  (Id. ¶ 43-44.)  This repeated discipline and continued refusal to cooperate is sufficient to state a claim. The Court thus denies this part of defendants' Motion to Dismiss.

        4.       Argument: Failure to Consider FMLA Application Does Not Violate the ADA

Defendants also contend that their alleged failure to consider plaintiff's application for FMLA leave did not violate the ADA.  (Defs.' Mot. Dismiss 14-15.)  In making this argument,

defendants rely on Trevino v. United Parcel Service, No. 08-0889, 2009 WL 3423039 (N.D. Tex. Oct. 23, 2009), a case in which a plaintiff brought a failure-to-accommodate claim against her employer under the ADA. The plaintiff's claim in that case was based entirely on her allegation that the employer had repeatedly "denied or delayed" approving her requests for FMLA leave. Id. at *12. The court held that an ADA failure-to-accommodate claim could not redress wrongful denial of FMLA leave; FMLA leave is "a right enforceable under a separate statutory provision." Id. Since the plaintiff in Trevino failed to present any other evidence that the defendant had "denied any accommodation request or . . . refused to engage in good faith negotiations related to accommodation of her disabilities," the court granted the defendant's motion for summary judgment as to the failure-to-accommodate claim under the ADA. Id. at *13.

The Court rejects this argument as inapplicable to this case. First, plaintiff's response clarifies that the reasonable accommodation she sought was "extra sick days," not FMLA leave. (Pl.'s Br. Opp'n 11.) Moreover, defendants' alleged mishandling of plaintiff's FMLA requests is one of many examples of discriminatory conduct that support plaintiff's ADA claim. Indeed, plaintiff devotes twenty-three paragraphs of her Complaint to her ADA claim, and only two of those paragraphs allude to the FMLA leave denials. (Compl. ¶¶ 101, 116.) Finally, plaintiff does not contend that denial of FMLA leave is a per se violation of the ADA. The Court thus denies this part of defendants' Motion to Dismiss.

## V. CONCLUSION

For the foregoing reasons, the Court grants defendants' Motion to Dismiss as to plaintiff's claims against CHE and the claims plaintiff withdrew in her response to the Motion to Dismiss. Plaintiff withdrew the following by response: (1) her compensatory damages claim

under the FMLA, (2) her hostile work environment claim under the FMLA, (3) her claims against defendant Shanks under the ADA, and (4) her claim for compensatory damages under the ADA's anti-retaliation provision.

The Court denies defendants' Motion to Dismiss in all other respects. That leaves the following for adjudication: (1) claims against SMMC and Shanks for denial of FMLA benefits and interference with the exercise of FMLA rights, with the parties agreeing that compensatory damages are not available; (2) claims against SMMC under the ADA for harassment, hostile work environment, retaliation, and wrongful termination, with the parties agreeing that compensatory damages are not available as to the retaliation claim; and (3) claims against SMMC and Shanks under the PHRA for harassment, hostile work environment, retaliation, and wrongful termination.

The denial of defendants' Motion to Dismiss is without prejudice to their right to raise their arguments on motion for summary judgment or at trial. An appropriate Order follows.